SPAULDING, ADMINISTRATOR OF WATKINS, v. COOK AND WATKINS.*

*Embezzlement under s. 10, c. 51, of the Gen. Sts.*

Where defendants fraudulently concealed effects of the deceased before administration granted, with the intent of finally converting the same to their own use, but which the administrator afterwards found in their possession, it was held embezzlement under s. 10, c. 51, of the Gen. Sts.

Where defendants embezzled notes and U. S. bonds before administration granted, but the administrator recovered all the property in specie before suit, except some coupons cut from the bonds and sold by defendants, but the avails of which were paid to the administrator, it was *held* in an action founded on s. 10, c. 51, of the Gen. Sts., that defendants were liable by way of penalty, for only once the value of the coupons.

THIS was an action founded on s. 10, c. 51, of the Gen Sts. The case was referred, and the referee reported as follows ;

On the 10th of August, 1869, Joel G. Watkins died intestate at Chester, Vt., being at that time a resident in said town. He left a widow, then living in the state of Iowa ; also, a sister, Drusilla T. Watkins, one nephew, and three nieces. At the time of his death, he was possessed of considerable personal estate, consisting mostly of the United States bonds named in the plaintiff's declaration. He had not lived for some time with his wife, from whom he was estranged, but for a portion of the time had lived with his sister Drusilla, and was living with her at the time of his death. His United States bonds and personal effects were at her house, and about the time of his death, she took possession of the same. His widow, learning of his death, returned to Vermont, and took measures for the settlement of his estate. On the 9th of September, 1869, the plaintiff was appointed administrator of the estate of the said Joel, and took upon him that trust. He took measures immediately to find the estate of the deceased and ascertain its amount; and to this end, applied several times to the said Drusilla for information. She had the property in question then in her hands, which she had previously taken measures to conceal, and had at that time concealed; but she denied all knowledge of the same, or that the deceased left any property. Subsequently, on a formal demand being made upon her for said property,

* Last argued at the General Term, 1874, and decided at the February Term, 1876, in Windsor County.

she produced certain articles of little value,but denied all knowledge of said bonds, or of any notes or money. At this time the bonds were in her possession or under her control, and she well knew that they belonged to the estate of the said Joel, and that she had no lawful claim upon them. The administrator expended much time and money in the search for the property of the intestate ; and, in that search, he was wilfully misled as to the same by said Drusilla and the defendant Cook. The fraudulent concealment of the bonds commenced at the time of the death of the said Joel, by said Drusilla, and was continued until said property was found by the administrator ; and it was her intention to finally convert and appropriate the same to her own use without the knowledge of the administrator or other heirs, and without giving any account of them, and was only frustrated in her purpose by the discovery of the property.

At the time of the death of the said Joel, the said Cook had knowledge that said bonds belonged to the estate of said Joel, and that the same were in the possession of the said Drusilla, and that she did not intend to surrender the same as a part of the estate of said deceased, but intended to retain the same for her own use and benefit. Prior to September 9, 1869, the said Cook, to aid and assist the said Drusilla in carrying out her said designs in regard to said bonds, took the same at her request, and carried them to his dwelling-house, not far distant, and kept them for some days in his safe. He also received from said Drusilla, on the 8th of September, 1869, coupons cut from the bonds in question, to the amount of $125 in gold, worth in the Boston market $168 in currency, which he caused to be sent to Boston and disposed of, and which he accounted for to said Drusilla by his promissory note, since paid to the administrator. At the time he took said coupons, he knew that they were cut from the bonds now in question ; and he took and disposed of the same to aid the said Drusilla in her design to withhold said bonds from the estate of the said Joel for her own use. Said Cook subsequently took a large portion of said bonds, amounting to about $5500, and kept them in his safe for said Drusilla until a portion of the bonds had been discovered concealed in the possession of said Drusilla, when they were returned to her. It does not appear that said Cook in what he said and did, made any claim to the ownership of said bonds or their proceeds, or expected any pecuniary gain or advantage from what was done by him ; but he co-operated with said Drusilla in the concealment of the bonds, knowing that they belonged to the said estate.

Early in November, 1869, a complaint was made in the Probate

Court against the said Drusilla for the embezzlement of said bonds, and she was cited to appear and answer thereto, which she did, denying all knowledge of the property in question. December 2, 1869, a search-warrant was issued on a complaint previously made, authorizing a search of the dwelling-house of said Drusilla for said bonds: and, on a search for the same, bonds to the amount of $2500 were found, with other property of said deceased, concealed in a barrel of flour in. said dwelling-house. On the day following, a complaint was made to the Probate Court against said Cook, for embezzling said bonds, or a portion of them, and a citation issued to him. Said Cook appeared, but no disclosure was taken in writing from him. He made a verbal statement in regard to what he knew of the bonds, from which it appeared that $5500 of them were in his safe at the time of the search of the house of Drusilla, but that they were returned to her the morning following, and after he knew of the finding of those concealed in the barrel of flour. During the evening next following, the said Drusilla surrendered these bonds to the administrator. And the referee finds that all the property alleged to have been embezzled, or the proceeds of it, has come into the hands and possession of the administrator, the present plaintiff, and had so come prior to the commencement of this suit.

Some time prior to the death of the said Joel, he passed into the possession of the said Drusilla the bonds in question, or a large portion of them; but he did not fully relinquish his claim upon them, or ownership of them, and subsequently took them again into his possession as the owner, and continued to exercise acts of ownership over them until the time of his death, without objection on the part of the said Drusilla. At the time the larger portion of the bonds were delivered to the administrator, it was understood by the defendants, or their counsel, that if said bonds were thus surrendered, no penalties were to be exacted by the administrator; but there was no mutual agreement by the parties to this suit to that effect. At several times prior to the death of the said Joel, he expressed and had the intention of leaving all his property to the said Drusilla and others, to the exclusion of his wife; but nothing effectual was done by him in his lifetime to bar the wife of her claim at law, to share in his estate.

The value of the bonds in question, at the time of the alleged embezzlement, was $9390 in currency, belonging to the estate of the said Joel; and if, upon the facts hereinbefore stated, the court shall be of the opinion that either of said defendants has embezzled said bonds, the referee finds that such person forfeited double the sum stated above, and is liable to the penalty pre-

scribed in chapter 51, section 10, of the General Statutes of Vermont, but that one-half of said sum has been paid and satisfied by the restoration of the bonds in question to the administrator, and the acceptance of the same by him.

The question intended to be referred to the court is, whether the acts and intentions of the defendants, or either of them, as found above, amount in law, to an embezzlement of the property under the circumstances of this case.

The court, at the December Term, 1872, Windsor County, BARRETT, J., presiding, rendered judgment on the report for the plaintiff, *pro forma*, for the amount reported by the referee, to which the defendants excepted.

*George L. Fletcher* and *Hugh Henry*, for the defendants.

The facts as found, clearly show there never was any embezzlement within the meaning of the statute. At the time of commencing this suit, plaintiff had no right of action for any property of the intestate. There can be no judgment for a penalty unless there is first found a right to recover the value of the property in said judgment as one-half thereof, then by force of the statute, " double the amount or value of the property so embezzled or alienated can be recovered." The penalty only is sought to be recovered in this action. We insist the penalty is only measured by the value of the property actually embezzled or alienated from the estate—the statute gives no right of action for an attempt to embezzle. No penalty accrues till the right to recover for the property embezzled is first established. Upon the facts as found, there cannot be a doubt but defendant Drusilla believed the bonds were hers by the expressed will and intention of the intestate that they should be hers after his death. Our statute evidently was enacted for the purpose of reaching cases where the estate had suffered loss by some person actually converting the personal estate of a deceased person, and effectually depriving the estate of the same. The administrator voluntarily received of defendant Drusilla $5500 in bonds, and the report shows that at the time of receiving them, defendants, or their counsel, then understood that if they surrendered the bonds, no penalties would be exacted by the administrator. We insist that the administrator's

receiving this property, estops his right to bring this suit, if any had accrued to him before receiving said bonds. *Hicks* v. *Cram*, 17 Vt. 449; *Wakefield* v. *Crossman*, 25 Vt. 298.

Section ten gives no action to recover the same goods and effects which belonged to the deceased, but to recover as damages "double the amount or value of the property so embezzled or alienated." Embezzlement cannot be committed by holding the goods intact, and securely keeping them from the time of the death of the owner until the appointment of an administrator. A refusal to deliver to the administrator after his appointment, can not be embezzlement; if the person has not committed the act before the appointment, then the administrator has no cause of action under section ten.

It is very plain that the administrator could not at the time he commenced this action have maintained an action of trover against either of these defendants for a conversion of the bonds. If not liable to such an action because there was no conversion which would subject them to a judgment, then we say there was no such alienation or conversion of the property as will subject them to a judgment as a penalty in this action for embezzlement. *Roys* v. *Roys*, 13 Vt. 543; 2 Arch. Crim. Pl. s. 10, tit. Embezzlement; 2 Bishop Crim. Law, c. 25; *People* v. *Hennessey*, 15 Wend. 151.

That part of the statute giving double damages to the use of the estate, is highly penal in its consequences; and to subject a person to its legal rigor, the case must be made out by full proof, by the same rule governing criminal cases. Every intendment is to be made in favor of the defendants, both as to the law and the facts. *Roys* v *Roys*, *supra;* 3 Greenl. Ev. s. 29; *Ellis* v. *Hull* 2 Aik. 41. The plaintiff must show this to be an embezzlement at common law, in order to entitle him to a recovery under this statute, which should have the same construction. *Brooks* v. *Clayes & Morse*, 10 Vt. 37. Drusilla's intention, unaccompanied by the act itself, can not make her liable. The act and intent must combine, to constitute embezzlement, or subject a party to a judgment founded upon a penal statute. *Gates* v. *Lounsbury*, 20 Johns. 427; 1 Bishop Crim. Law, ss. 204, 206, 207, 209, 304; 2 Bishop Crim. Law, c. 25.

There cannot be a judgment rendered in this case for double the amount, as the referee finds only a liability for half that sum, in case the facts found shall amount to embezzlement in law. We insist that no such judgment can be rendered in a case founded upon this statute. And we further insist, that under this statute there cannot be a judgment rendered unless the same includes damages for the original property alienated from the estate, and to that may be added its value once again, making a judgment for double the amount or value of the original property claimed to have been embezzled. The statute being penal ·in its consequences, as well as remunerative to the estate, we claim a strict construction should be given, and all doubts that may arise upon the trial shall go to the favor of the defendants. 3 Greenl. Ev. s 29 ; *Roys* v. *Roys, supra.*

The delivering over of the property to the rightful administrator before suit brought, gives the defendants the right to interpose the plea of *plene administravit*, which is full answer to this suit. *Roys* v. *Roys, supra* ; 2 H. Blk. 18 ; 7 Mod. 31 ; 1 Salk. 313 ; 1 Esp. 335 ; 3 T. R. 590 ; Yelv. 137, note.

*C. B. Eddy*, *L. Adams*, and *D. C. Denison*, for the plaintiff.

The report shows a clear case of conspiracy by the defendants to rob the estate of Joel G. Watkins of $8000 in U. S. bonds, worth in currency $9390. Measures·were concerted for a fraudulent concealment, and for deception and falsehood, with the fraudulent intention of converting them to their own use. In the execution of these measures they joined hands, planned and worked together. Cook must be treated as a principal in the wrong doing. All who participate in cases of this kind are principals, and are jointly liable for the consequences of their acts. ·There can be no accessaries. ·*Hinds* v. *Jones,* 48 Me. 348 ; *Scoville* v. *Post,* 3 Edw. Ch. 203 ; 1 Chit. Pl. 91 ; *Post* v. *Ketchum,* N. Y. Ct. of Errors, 1 Leg. Obs. 261 ; 3 Abbot's Dig. N. Y. Reps. p. 96,·ss. 393, 394 ; Addison Torts, 309. There can be no accessaries even in crime, unless the crime is a felony. In misdemeanors, all who in any way participate are principals. Wharton Crim. Law, s. 116. But were this proceeding a criminal one,

and the act complained of a felony, he would be a principal. He was present and took part in the acts and shared in the fraudulent intent which constitute the wrong complained of. Wharton Crim. Law, s. 116. He cannot shield himself with the plea that he was the mere agent of Drusilla. *Bennett* v. *Ives,* 30 Conn. 329 ; *McPartland* v. *Reed,* 11 Allen, 231.

If Drusilla had taken the bonds under an honest, though mistaken claim of right, and Cook, at her request, had assisted her in good faith, would there be any doubt that both would be tortfeasors and jointly liable ? Cook's status in this case, as to liability, is the same as it would be in an action of trespass or trover. 1 Chit. Pl. 91.

Whether Cook, in the perpetration of all this villainy, intended to benefit himself pecuniarily, or intended to benefit Drusilla or others, can make no difference. It is all-sufficient that he intended to and did rob the estate. He took a prominent part in the embezzlement, and should be made to suffer the consequences imposed by the statute. He is a tort-feasor and liable, whether benefitted by the act or not. Addison Torts, 309 ; *Hinds* v. *Jones, supra;* 2 Abbott's Dig. N. Y. Reps. 114, ss. 1, 2.

Defendants are not made guiltless in this action because they were compelled to succumb to the untiring pursuit of the administrator, and their plunder taken from them by the rightful custodian, when, and only when, they could keep it no longer. *Commonwealth* v. *Butterick,* 100 Mass. 1. The seizure of the $2500, and the surrender of the $5500, under the circumstances, to the administrator, can in this case, as in an action of trespass or trover, only avail in mitigation of damages. Hilliard Rem. Torts, 415, s. 15.

It is claimed that defendants are not liable in this action because, it is claimed, they would not be liable at common law as executors *de son tort,* for the reason that the embezzled property came into the hands of the administrator before suit was brought. The terms, *embezzlement* and *alienation,* do not include all the acts of intermeddling which, at common law, make the intermeddler so liable. *Bacon* v. *Parker,* 12 Conn. 212 ; *Emery* v. *Berry,* 8 Fost. 473 ; 3 Redf. Wills, 21, note 6. " If trespass be brought

by an executor against an executor *de son tort*, he may give in evidence payments of debts to the value, in mitigation of damages, but yet there shall be a verdict against him, for he is nevertheless a trespasser." Buller N. P. 91 ; *Tobey* v. *Miller*, 54 Me. At common law, the liability of an executor *de son tort* was only to the extent of the value of the assets that came to his hands. *Bellows* v. *Goodall*, 32 N. H. 99, and cases there cited. The statute fixes the liability for those acts of intermeddling which amount to embezzlement or alienation, at double the value of the property embezzled or alienated. It is not claimed that at common-law the intermeddler could discharge his liability, except by showing that he had responded in some way to the full extent of his liability. If the defendants embezzled or alienated the bonds or coupons, they cannot be relieved of the liability imposed by the statute, by responding merely to the extent of their common-law liability. The full demand of the statute must be complied with. *Neal* v. *Barker*, 2 N. H. 477 ; *Bellows* v. *Goodall*, 32 N. H. 99 ; Gen. Sts. N. H. c. 176, s. 15 ; Gen. Sts. Vt. c. 51, s. 10 ; Stat. Cal. (1850-1853), p. 392, s. 116 ; Comp. Laws Mich. (1871), Vol. 2, 1387, s. 10 ; Gen. Laws Oregon, p. 442, s. 1093 ; Comp. Laws Nevada (1873), Vol. 1, p. 156, s. 118 ; Comp. Laws Arizona (1871), 268, s. 116 ; *Beckman* v. *McKay*, 14 Cal. 250 ; *Johns* v. *Notting*, 29 Cal. 507. Statutes of Ohio and Indiana make measure of damages value of property and ten per centum. For history of legislation on this subject, see Statutes of Vt. act of March 8, 1787, p. 52 ; also act of March 10, 1797, Comp. of 1808, p. 142, s. 62 ; also probate act of Nov. 15, 1821, Comp. of 1824, p. 347, s. 68.

Neither of the defendants came into possession of the bonds and coupons " by color of legal title." They " did not act in good faith, under color of legal title, supposing that either had good title." *Roys* v. *Roys*, 13 Vt. 543 ; *Batchelder* v. *Tenney*, 27 Vt. 578.

It is said, by a strict construction of the terms, *embezzle* and *alienate*, the acts of defendants, with the intent as found by the referee, do not amount to embezzlement or alienation. The sell-

ing of the coupons was unquestionably an alienation within the meaning of the term as used in the statute.

In construing the statute, we must have in mind the spirit and reason of it—the protection to dead men's estates the legislature designed to afford, and the way provided by the statute to secure it. Penal statutes are not to be construed so strictly as to defeat the obvious intention of the legislature. Is the statute in question a penal statute, or wholly remedial? *Johns* v. *Notting, supra;* Bouvier's Institutes, ss. 107, 111.

*Bezzle* is said to come from the old French word *besler*, and is defined in Zell's Encyclopedia, " to deceive, to gull, to impose upon, to cheat, to purloin." *Embezzle* is from the Norman-French *embeasiler*, and the definition given by Webster is, " to filch ; " Richardson's Dict., "to steal, filch, lurch, pilfer, ruin, purloin, convey away." " The secretion of property by a bankrupt with intent to defraud his creditors," would constitute embezzlement. Steph. Crim. Law, 91, 92 ; Burrell's Law Dict. Part I, 415. Common law signification is, " all kinds of stealing." CAMPBELL, J., in *People* v. *McKinney*, 10 Mich. 109 ; *Whip* v. *Thomas*, Buller N. P. 130 ; Espinasse Dig. 5 ; Crabb's History Eng. Law, 368 ; 4 Black. Com. * 231, 232. Where it is a servant's duty to account for and pay over moneys received by him, at stated times, his wilfully not doing so is 'an embezzlement. *Regina* v. *Welch*, 1 Den. C. C. 199 : *Regina* v. *Benner*, 1 Car. & K. 296 ; Davis Crim. Justice (Heard's ed.), 427 ; *Rex* v. *Jones*, 7 C. & P. 833 ; Roscoe Crim. Ev. * 449, 459. Where a servant, immediately on receiving a sum of money for his master, enters a smaller sum on his master's book, and ultimately accounts to the latter for the smaller sum, he may be considered as embezzling the difference at the time he makes the false entry. *Regina* v. *Jackson*, 1 Car. & K. 384 ; Russ. & Ry. C. C. 463.

The opinion of the court was delivered by

WHEELER, J. This case has been three times argued, without producing unanimity of judgment among the members of the court who have heard it at either time ; but enough have concurred to dispose of it, and nearly all agree to the result now

reached. Upon the facts reported, there would seem to be no good ground to doubt but that the defendant Drusilla Watkins, both in fraudulent purpose and wrongful act, after the decease of the intestate and before the granting of letters of administration, did embezzle the bonds for which this suit is brought, and had at the time the administration was granted, so far converted them to her own use, that if the administrator had then brought this suit to charge her for them, he would have been entitled to recover in it the full double value of them. Nor does there appear to be any good ground to question but that the defendant Cook so knew of her purpose, and participated with and aided her in the wrongful act for which she made herself liable, that he made himself just as liable as she was. At that time the embezzlement by both was complete, although all of their acts which show their purpose in what they had done prior to that time, had not then been done. These later acts, although they would create no liability under this statute, afford competent and ample evidence that the former acts amounted to the very thing that the statute was aimed at. The facts reported show further, that as to the coupons cut from the bonds by the defendant Watkins on the 8th day of September, 1869, the day before administration granted, and sold by the defendant Cook for her, she had not only embezzled them, but had alienated them before administration so as to make herself liable under that branch of the statute relating to alienation, and that the defendant Cook had so aided and abetted her in that act as to be equally liable for it with her. And these coupons were not only in that way converted, in law, to her use, but were so disposed of that they could not be and were not ever restored to the estate. But the administrator, when he had taken measures that apprized him of what the defendants had done, did not choose to, and did not in fact, stand upon the right of action for double the value of the property that had accrued to him against the defendants, but followed the specific property itself, and recovered it all except the coupons mentioned, from them to himself, for the estate. The important question in the case, and the one about which the most difficulty has been experienced, is, as to the effect of that recovery of the property.

The statute makes the person embezzling or alienating, chargeable and liable to the action of the executor or administrator, without prescribing any form of action, leaving that to the common law—although, doubtless, the action would have to be brought expressly for the double amount or value, in order to recover it—and gives no new right other than by such an action. And the right it does so give, although in some sense, and in that sense it is sometimes spoken of in cases and books, it is as to once the value of the property, penal, is still remedial, and merely gives the enhanced damages by way of making greater compensation to the party injured on account of the nature of the wrong recovered for. The right of recovery remains the same as it would have been without the statute ; but when the right is established, the statute comes in and provides for the amount of recovery as a measure of damages merely. *McCarty* v. *Guild*, 12 Met. 291 ; *Burnett* v. *Ward*, 42 Vt. 80. In an ‘action brought when this one was, to recover common-law damages only, the plaintiff could have recovered no more than merely nominal damages for the technical conversion of the bonds themselves, because they had been returned to and received by him, without being in any wise lessened in value. For the coupons, his right of recovery would have been measured by their value at the time of conversion, lessened by the amount he had received on account of them. He could not have recovered anything for the value of the bonds, for those, and the value of them, he then fully had. He could recover for the coupons and for their value, because he did not, and the defendants did, have them, but would have to suffer a reduction of his recovery on account of what had been paid him toward it, not because his right of recovery was that much less, but because he had received so much toward it. *Chamberlain* v. *Murphy*, 41 Vt. 110. In this action, brought for the same things, precisely, that the other would have been brought for, the first question is as to what property the plaintiff can recover once the value, or single damages for. The answer must be, not for the bonds, for he has them already ; and not for the mere technical conversion of them, for the statute only gives recovery for amount or value. There being no right of recovery for once the value

of the bonds, there can be none, a fortiori, for twice their value. The answer further must be, that the plaintiff can recover once the value of the coupons ; and by force of the statute this right of recovery is extended to twice their value, and this amount is to be lessened by the amount the plaintiff has received on account of them towards his damages. The value of the coupons is found to be one hundred sixty-eight dollars. The plaintiff's right of recovery in this action measures twice that sum, and as he has received once that sum on account of them, there is left to him the right to judgment for that sum again. That judgment he was entitled to at the time the judgment in the County Court was rendered, and he is entitled to the same now, with interest on it from then till now.

Judgment reversed, and judgment on report for plaintiff for one hundred sixty-eight dollars damages, with interest from the time of judgment in the County Court.