W. G. PAYNE v. WILLIAM SHEETS.

January Term, 1903.

Present: TYLER, START, WATSON, STAFFORD and HASELTON, JJ.

Opinion filed June 27, 1903.

*Trespass—Ownership of locus—Special rights—Penal action.*

One who owns the exclusive right to hunt, trap and fish upon the lands
   of another, is the "owner" of the land within the meaning of V. S.
   4626, and may maintain the action therein provided.
This statute is remedial, not penal.

TRESPASS under V. S. 4626. Heard on the defendant's demurrer to the second count of the declaration, at the September Term, 1902, Franklin County, *Munson,* J., presiding. Demurrer overruled and count adjudged sufficient. The defendant excepted.

*D. G. Furman* and *Willard Farrington* for the defendant.

The plaintiff is not the owner of the *locus,* and has only an easement in the land.  2 R. & L. Law Dic. 915; *Parmenter* v. *Caswell,* 53 Vt. 6. The statute is penal and should be strictly construed.  *Burnett* v. *Ward,* 42 Vt. 80; 2 Aik. 41; *Adams* v. *Nichols,* 1 Aik. 314.

*Henry A. Burt* and *Alfred A. Hall* for the plaintiff.

The plaintiff was the "owner." *Ellis* v. *Welch,* 6 Mass. 246; *Parks* v. *Boston,* 15 Pick. 198; 1 Hill. Real Prop. 23; 3 Greenl. Ex. s. 54; 2 R. & L. Law Dic. 915; *Lozo* v. *Southerland,* 38 Mich. 171; *Camp* v. *Rodgers,* 44 Conn. 291; *School* v. *Improvement Co.,* 57 N. U. 113; *Radcliff* v. *Wood,* 25 Barb. 22.

The action, though statutory, is an action of trespass and simply adds to the actual damage the sum of ten dollars.

Watson, J.    This action is trespass *quare clausum fregit* brought against the defendant under V. S. 4626, for wilfully entering upon the land described, without permission of the owner or occupant, for the purpose of shooting thereon, and the case is here on demurrer to the second count in the amended declaration.    The sole contention of the defendant is that said count has no such allegation of ownership of the *locus in quo* in the plaintiff as enables him to maintain this action.

The allegation in this behalf is, that before and at the time when, and so forth, the plaintiff "was, and now is, the owner and occupant of said land and premises for the purpose of shooting, trapping, and fishing, and that the same was then and there, and now are, enclosed," etc.    This allegation, construed most strongly against the pleader, shows that the plaintiff then was and now is the owner of the right to shoot, trap, and fish on the lands described, but not that he is the owner of the absolute fee.    Inferentially, the land itself, except such interest therein, if any, as may be within the plaintiff's said right, is owned by some one other than the plaintiff.    And in the consideration of the case we shall treat it in this respect as counsel on both sides have treated it in their briefs, namely,

that such right in the plaintiff, whatever may be its nature in law, is absolute and exclusive.

The statute provides a forfeiture of ten dollars by a person who wilfully enters upon such lands without the permission of the owner or occupant, for the purpose of fishing, trapping, or shooting thereon, "to be recovered by the owner thereof in an action of trespass, in addition to the damages sustained thereby." It is urged by the defendant that the words "owner thereof" have reference to the person who owns the legal title to the land, the one who would be entitled to recover the damages sustained by such entry, to the property itself, and not to a person having an ownership for a particular purpose, such as the plaintiff has, which the defendant contends is but an easement or a specific right that he may exercise on the land.

Has the plaintiff an easement merely, or has he an interest partaking of the reality? The determination of this question is of much importance in the solution of the main question, and therefore it requires careful consideration. By the common law of England, animals *ferae naturae* are not the subject of absolute property while at liberty in their wild state, but the owner of land is considered as having a qualified or special right of property in such animals, which are fit for the food of man, so long as they remain on his territory, and when killed or captured by the owner of the land they become his absolute property. *Sutton* v. *Moody,* 1 Lord Raym. 250; 2 Stephen's Com. 4-9; *Ewart* v. *Graham,* 7 H. L. Cas. 331; *Blades* v. *Higgs,* 11 H. L. Cas. 621, 3 Eng. Rul. Cas. 76. The English authorities upon the question of such right of property do not seem to be exactly in harmony; but if we keep in mind the legal meaning of the word "property" when thus used, the want of harmony largely disappears. It should be borne in mind also that noxious animals may not be within this rule.

22

The case of *Blades* v. *Higgs* was carefully considered by the House of Lords and is much in point. Therein Lord Chancellor WESTBURY says that when it is said by the writers on the common law of England, that there is a qualified or special right of property in game, that is, in animals *ferae naturae,* which are fit for the food of man, whilst they continue in their wild state, he apprehends that the word "property" can mean no more than the exclusive right to catch, kill, and appropriate such animals, which is sometimes called in law a reduction of them into possession; and that this right is said in law to exist *ratione soli* or *ratione privilegii.* His Lordship continues: "Property *ratione soli* is the common law right which every owner of land has to kill and take all such animals *ferae naturae* as may from time to time be found on his land, and as soon as this right is exercised, the animal so killed or caught becomes the absolute property of the owner of the soil. Property *ratione privilegii* is the right which, by a peculiar franchise anciently granted by the Crown, by virtue of its prerogative, one man had of killing and taking animals *ferae naturae* on the land of another, and in like manner the game, when killed or taken by virtue of the privilege, becomes the absolute property of the owner of the franchise, just as in the other case it becomes the absolute property of the owner of the soil." And Lord COKE says (4 Inst. 304) "that, seeing the wild beasts do belong to the purlieu man, *ratione soli,* so long as they remain in his grounds he may kill them; for the property, *ratione soli,* is in him." See, also, 4 Bac. Abr. (Bouvier's ed.) 435.

It is laid down in 2 Black. Com. 419, that if a man start game on the private grounds of another and kills it there, the property belongs to him in whose ground it was killed, because it was started there, and the property arises *ratione soli.* Bees

are considered as *ferae naturae,* and the same principles of law governing the right of property therein are applicable. Again, Blackstone says: "But it hath also been said, that with us the only ownership in bees is *ratione soli;* and the charter of the forest, which allows every freeman to be entitled to the honey found within his own woods, affords great countenance to this doctrine, that a qualified property may be had in bees, in consideration of the property of the soil whereon they are found." 2 Black. Com. 393.

So it was held in *Gillet* v. *Mason,* 7 Johns. 16, where the question of such right of property was presented between the finder and a tenant in common in the land. And in *Goff* v. *Kilts,* 15 Wend. 550, it is said that a swarm of bees unreclaimed from their natural liberty while in the tree, like birds or other game, belong to the owner of the soil *ratione soli.* And the same doctrine is laid down in *Rexroth* v. *Coon,* 15 R. I. 35, 2 Am. St. Rep. 863, wherein it is said that, excepting game laws and statutory regulations, the law in this country with regard to property in animals *ferae naturae* is substantially in accord with that of England. The law touching the right of several fishery is the same. In *Beckman* v. *Kreamer,* 43 Ill. 447, 92 Am. Dec. 146, it is said: "By the common law, a right to take fish belongs so essentially to the right of soil in streams or bodies of water, where the tide does not ebb and flow, that if the riparian proprietor owns upon both sides of such stream, no one but himself may come upon the limits of his land and take fish there. * * * Within these limits, by the common law, his right of fishing is sole and exclusive, unless restricted by some local law or well established usage of the State where the premises may be situate.

This right to take fish within the limits of one's land bounding upon and including a stream not navigable is so far,

a subject of distinct property or ownership that it may be granted, and will pass by a general grant of the land itself unless expressly reserved; or it may be granted as a separate and distinct property from the freehold of the land; or the land may be granted while the grantor reserves the fishing to himself." See, also, *Bingham* v. *Salene,* Oreg. 208, 3 Am. St. Rep. 152.

We have thus referred to many authorities upon the question of such right of property as an incident to the ownership of the soil, because of the decisions in this country at first view apparently to the contrary, among which is one made by this Court in the case of *State* v. *Theriault,* 70 Vt. 617, 41 Atl. 1030. But upon a careful examination of that case and of the cases similar in principle, we do not think they are in conflict with the law here laid down. The sole question in *State* v. *Theriault* was, as considered, the constitutionality of the law regulating the right of the owner of land to fish on his own premises. The law was upheld as a proper exercise of the police power, under the provisions of the Constitution. Therein it is said that fish are *ferae naturae,* and the common property of the public, or the State, in this country. And a quotation is given from Blackstone to the effect that the generality of those animals which are said to be *ferae naturae,* or of a wild and untamable disposition, are among those things which, notwithstanding the introduction and continuance of property, must remain common. Which things, so long as they remain in possession, every man has a right to enjoy without disturbance; but if they escape, or he abandons them, they return to the common stock, and any one else has an equal right to seize and enjoy them, as in them only a usufructory property is capable of being had. But this principle, when applied to the concrete case, involving the rights of the owner of the soil on

which such animals are found and taken, against a trespasser who there takes them, must be construed in connection with the law, that such owner has the exclusive right of hunting and fishing upon his own private grounds, and the right of property in the animals arises therefrom; in which case the latter principle governs. To state it otherwise, the general ownership is in the people in their united sovereignty; but when such animals go upon private grounds, then the qualified or special right of property in the owner of the soil attaches by virtue of his exclusive right to hunt, kill, or capture them while there; and this upon the principle that property which a person has a special right to acquire to the exclusion of others, is private property. Indeed, qualified property in chattels is an exception to the general right, and means a temporary or special interest, liable to be totally devested on the happening of some particular event. 2 Kent's Com. 427. And so seems to be the law as laid down by Mr. Serjeant Stephens, for, after stating that if a man start any animal on his own ground, and follow it into another's, and kills it there, the property remains in himself; but if (being a trespasser) he start it on another's land, and kills it there, the property belongs to him in whose ground it was killed; and again, if it be started by a stranger in one man's chase or free warren, and hunted into another liberty, the property is said to continue in the owner of the chase or warren, he says: "These distinctions seem to show that in general the property is acquired by the seizure or occupancy, though that cannot prevail against the better claim of him in whose grounds the animal is both killed and started, and who, therefore, may be said to be entitled *ratione soli;* or of him who has already a qualified property in it, *ratione privilegii.*" 2 Steph. Com. 20-21. Nor was it differently understood in that case; for the exclusive right in the owner of the soil over which a brook

flows to catch fish therein, under regulations made and provided by the General Assembly, is recognized; and further referring to Blackstone, it is said that the same writer more fully treats of this class of common property and the rights of individuals therein in chapter 25 of the same book, and there lays down the principle that an individual may acquire or have a qualified property in such animals, among other ways, "on account of his special right or privilege of capturing and killing them in exclusion of other persons," which special right "does not exist in this country, except as limited by ownership of the place from which they are taken and the right to exclude others therefrom." Again in support of the doctrine there laid down a quotation is given from the case of *Peters* v. *State of Tenn.*, 33 L. R. A. 114, in which this qualified right of property incident to the sole and exclusive right of fishing is stated.

An important case, having some bearing upon this question, was recently before the Supreme Court of the United States. In *Geer* v. *State of Conn.*, 161 U. S. 519, 40 L. Ed. 793, the case was in error to the Supreme Court of Errors of the State of Connecticut to review a judgment of that Court affirming the judgment of a lower Court convicting the plaintiff in error of unlawfully receiving and having in his possession with intent to transport beyond the State certain woodcock, grouse, and quail killed within the State. By the statutes of Connecticut, the open season for game birds mentioned therein was from the first day of October to the first day of January; and the birds which the plaintiff in error was charged with unlawfully having in his possession for the purpose of unlawful transportation, were alleged to have been killed during the open season. The Court, speaking through Mr. Justice WHITE, reviewed

the civil and the common law touching the ownership of animals *ferae naturae,* the nature of property in game, and the authority which the State had lawfully to exercise in relation thereto. In sustaining the constitutionality of the law, as within the police power, the Court said that from the earliest traditions the right to reduce animals *ferae naturae* to possession had been subject to the control of the law-giving power. It was held that for the purpose of exercising this power or control, the State represents its people, and the ownership is that of the people in their united sovereignty. But the qualified right of property is recognized by both the civil and the common law. After quoting from the civil law, it is said: "No restriction, it would hence seem, was placed by the Roman law upon the power of the individual to reduce game of which he was the owner, in common with other citizens, to possession, although the Institutes of Justinian recognize the right of an owner of land to forbid another from killing game on his property, as indeed this right was impliedly admitted by the Digest in the passage just cited."

It is further said that "Blackstone, whilst pointing out the distinction between things private and those which are common rests the right of an individual to reduce a part of this common property to possession, and thus acquire a qualified ownership in it, on no other or different principle from that upon which the civilians based such rights." And quoting from Blackstone, it is said: "a man may lastly have a qualified property in animals *ferae naturae, propter privilegium;* that is, he may have the privilege of hunting, taking, and killing them in exclusion of other persons. Here he has a transient property in these animals usually called game so long as they continue within his liberty, and he may restrain any stranger from

taking them therein; but the instant they depart into another liberty, this qualified property ceases."

Nor is such qualified or special right of property without reason. Animals *ferae naturae* are of chattels classed in law as things personal which partake of the quality of things real, and are ranked as parcel of the freehold, because necessary to the well-being of the inheritance; and if the owner die intestate seized of an estate of inheritance in the land, the property rights in such animals at liberty thereon, as a general rule, descend with the inheritance to the heir, instead of belonging to the personal representatives of the deceased. Co. Litt. 8 a; *Case of Swans,* 7 Rep. 175; 2 Stephen's Com. 6. And in *Blades* v. *Higgs,* before cited, it is said by Lord CRANWORTH that wild animals are not the subject of larceny; but that they partake, while living, of the quality of the soil, and are, as growing fruit is, considered as part of the realty. This clearly shows that the right owned by the plaintiff of shooting, trapping and fishing on the *locus in quo,* constitutes in law a *profit a prendre,* which consists of a right to take a part of the soil or produce of the land in which there is a supposable value. 2 Washb. Real Prop. 25.

In *Wickham* v. *Hawker,* 7 Exch. 62, Baron PARKE, delivering the opinion, said that the liberties to hawk, hunt, fish and fowl, granted to one, his heirs and assigns, were interests, or *profits a prendre.* And in *Ewart* v. *Graham,* before cited, where such a right was under consideration and upheld under a reservation in a deed given by the owner of the soil, Lord Chancellor CAMPBELL, referring to *Wickham* v. *Hawker* as a case wherein the nature of the right in question was exceedingly well explained, and from which it appeared to be an interest in the realty which is well known to the law, said: "The property in animals *ferae naturae,* while they are on the soil,

belongs to the owner of the soil, and he may grant a right to others to come and take them by a grant of hunting, shooting, fowling, and so forth; that right may be granted by the owner of the fee simple, and such a grant is a license of a *profit a prendre.*"

But usually there is a difference between an interest or profit to be taken or had in another's soil and an easement in another's soil. One of the distinguishing features of an easement is the absence of all right to participate in the profits of the soil charged with it; and another, that there must be two distinct tenements, the dominant to which the right belongs, and the servient upon which the obligation rests. While the right to profits, termed *profit a prendre,* consists of a right to take a part of the soil or produce of the land, in which there is a supposable value. *Gateward's Case,* 6 Co. Rep. 59, 10 Eng. Rul. Cas. 245; *Pierce* v. *Keator,* 70 N. Y. 419. Mr. Washburn, however, lays down the rule that "This right of *profit a prendre,* if enjoyed by reason of holding certain other estate, is regarded in the light of an easement appurtenant to an estate; whereas, if it belongs to an individual, distinct from any ownership of other lands, it takes the character of an interest or estate in the land itself, rather than that of a proper easement in or out of the same." Washb. Eas. 8. And in *Post* v. *Pearsall,* 22 Wend. 425, it is said that "a *profit a prendre* in the land of another, when not granted in favor of some dominant tenement, cannot properly be said to be an easement, but an interest or estate in the land itself." There being nothing in the case at bar indicating that the plaintiff's right was granted in favor of any dominant tenement, or enjoyed by reason of holding any other estate, we think it clear that the plaintiff's right is not an easement merely, but that it is a right of profit in the land of another, and therefore an interest in the land itself.

And so it was held in the next two cases cited, where practically the same contention was made as is made in the case at bar. In *Webber* v. *Lee,* 9 Q. B., the action was brought to recover damages for breach of a verbal contract professing to give a right to go on certain grounds and exercise the right of sporting over them and to carry away a definite portion of all the game killed. The question was whether it was an agreement to grant a right over coupled with an interest in the land, or only an agreement for a license to go on the lands. It was held that the right to kill and take away game is a *profit a prendre,* and an agreement for the enjoyment of it is a contract for an interest in land, and therefore within section 4, of the Statute of Frauds. In *Bingham* v. *Salene,* before cited, the plaintiffs held a grant to them their heirs and assigns, forever, from the defendants of "the sole and exclusive right, privilege, and easement to shoot, take, and kill any and all wild ducks and other wild fowl upon and in any and all lakes and sloughs and waters situate, lying, or upon" the defendant's lands, etc. This suit was brought to enjoin the defendants from interfering with the alleged exclusive right and privilege, and to restrain them from inviting or allowing any other person or persons on said lands for the same purpose. The defendants contended that the grant to the plaintiffs created nothing but a license. It was held that the right in the plaintiffs was exclusive, and that the grant created not a mere license, but an interest in the land itself. The right of fishing in non-tidal waters is of the same nature in law. This was discussed to some extent by this Court in *New England Trout and Salmon Club* v. *Mather,* 68 Vt. 338, 33 L. R. A. 569. In stating the common law of England, it is said that "the right of fishing in non-tidal waters by one not the owner of the soil thereunder is not an easement, but a right of profit in the land of another." See, also, to the

same effect, *Cobb* v. *Davenport,* 32 N. J. L. 369; s. c. 33 N. J. L. 223, 97 Am. Dec. 718; *Sterling* v. *Jackson,* 69 Mich. 488, 13 Am. St. Rep. 405.

Although the common law touching some of the questions here discussed is somewhat modified by the provisions of the Constitution, Ch. 2, s. 40, as seen by the cases before cited of *New Eng. Trout and Salmon Club* v. *Mather,* and *State* v. *Theriault,* and by *Payne* v. *Gould,* 74 Vt. 208, yet the questions before the Court are so little affected by such modifications that it is unnecessary further to notice them here.

It follows that, although the plaintiff is not the owner of the land, yet he has a separate and exclusive interest in the soil for a special purpose. It is not necessary, however, in the view we take of the statute, to consider whether this brings the plaintiff within the principle that, where a person has a separate interest in the soil for a special purpose, even though the right to the land is not in him, yet, if he be injured in the enjoyment of the particular use, he may maintain trespass *quare clausum fregit.* 2 Wat. Tresp. 135; *Crosby* v. *Wadsworth,* 6 East, 602; *Dolloff* v. *Danforth,* 43 N. H. 219; *Holforth* v. *Bailey,* 12 Q. B. 426, 66 Eng. C. L. 425.

V. S. 4626 is a part of the laws of this State enacted for the preservation of fish and game. The law of that section was designed not so much to punish trespassers upon land merely for the trespass committed, as to protect the owner of lands within the State in his exclusive right of catching fish, and of trapping, hunting and killing game upon his own premises, provided he complies with the conditions therein prescribed. The spirit of the law requires that it be so construed as to give the same protection to anyone having such exclusive right, whether he be the owner of the soil, or, as in this in-

stance, the owner of the right, exclusive of the soil except such interest therein as is within the right.

It is to be presumed that the makers of the law knew that the ownership of the soil and the ownership of such a right might legally be in different persons. And we think the intended scope of the law is sufficient to cover either.

The word "owner" does not always import an absolute owner, as the owner in fee simple of real property. Its meaning is often varied according to the connection in which it is used, and it is to be understood according to the subject matter to which it relates. *McFeters* v. *Pierson,* 15 Col. 201, 22 Am. St. Rep. 388.

Nor does the fact that the forfeiture named in the statute is to be recovered in addition to the damages sustained by the entry upon the land, show the law inapplicable to any "owner" other than the owner of the property upon which the entry is made. Under the law, the land must be inclosed by a fence or something equivalent thereto, and have notices posted upon it. The owner of the right to fish, trap, and hunt, by so inclosing it, may be the owner of the fence. The notices required may have been posted on the land at his expense, and owned by him. He may have traps, decoys, hides, and other suitable and proper conveniences upon the land for use in the legitimate exercise of his right. In such circumstances, can it be said that he may not sustain actual damages by a person's wilfully entering upon the land for the purpose of fishing, trapping, or shooting thereon? Furthermore, suppose the owner of the freehold wilfully enters upon the land without license for the same purpose. If the defendant's contention is sound, such owner could not be subject to prosecution under the statute in question, for the sole reason, if for no other, that he could not be both plaintiff

and defendant in the same suit.   Such a construction might defeat the object of the law, rather than to effectuate it.

But it is urged that the statute is penal, and therefore it should receive a strict construction.   No new cause of action is created by the statute.    In the same circumstances, the plaintiff has a right of action at common law.   Under the statute the forfeiture is given to the party aggrieved not as a penalty, but as cumulative damages for his injuries suffered.

The fact that the sum named is denominated a forfeiture, and is a specified sum, is not controlling in determining the nature of the statute.   The law as laid down in *Burnett* v. *Ward,* 42 Vt. 80, *Newman* v. *Waite,* 43 Vt. 587, and *Spaulding* v. *Cook,* 48 Vt. 145, seems conclusive that the statute is remedial and not penal.

Holding, as we do, that the plaintiff is the "owner" within the meaning of the statute in question, it is not necessary to decide what kind of action would be his proper remedy under the rules of the common law; for the right to bring an action of trespass is given him by statute.   *Parmenter* v. *Caswell,* 53 Vt. 6.

*Judgment affirmed, and cause remanded.*