ISAAC H. JAMES *vs.* THOMAS P. WOOD.

Franklin. Opinion December 11, 1889.

*Game. Property. Possession. Illegal capture. Game Warden. Damages.*
*R. S., c. 30, § 9.*

The releasing of live game, illegally taken, does not interfere with the legal right or title of the person so holding it. Accordingly, *it was held,* that the defendant, a game warden without process from a proper court, was not liable to the plaintiff for releasing a moose from his possession, it having been captured by the plaintiff, at a time of the year, when it was unlawful to hunt and take moose.

There is no property in wild animals until they have been reduced to possession. Such possession when it does not arise from illegal capture, is a sufficient custody against all persons, except such as are clothed with lawful authority or process to take them.

The defendant, a game warden without legal process having seized a deer in the rightful possession of the plaintiff, claimed to justify his act upon the ground that the animal being in possession in close time was proof of its having been unlawfully taken and that, by virtue of his office, he was authorized to take and turn the deer loose. The defendant failed to show that it had been captured in violation of law; the plaintiff was, therefore, entitled to recover the value of the deer.

ON MOTION AND EXCEPTIONS.

This was an action of trespass, containing two counts; the first for breaking and entering the plaintiff's close on the sixth day of June, A. D. 1888, and liberating one moose and one deer; and the second for taking and carrying away, on the same day, such moose and deer.

The plea was the general issue, with a brief statement justifying the taking and liberation of such moose and deer as a game warden.

It appeared that the plaintiff had captured the moose in the forest, in March of the same year, and carried it to his home and there retained it in an inclosure prepared for the purpose. It also appeared that in the same month the plaintiff purchased from some person a deer and likewise retained him, at his home in confinement, until liberated in the following June.

The defendant contended that both animals were voluntarily turned loose by the plaintiff himself.

The presiding justice, among other appropriate instructions not excepted to, charged the jury:—

I. "The defendant says that he went up there and told them that he had come to liberate the animals and commanded them to do it. After the defendant had told the plaintiff that,—if the plaintiff himself went and turned the animals loose, it would be his own voluntary act and it would not charge the defendant with being a trespasser. If, on the other hand, the defendant commanded the animals to be brought out into the field and he himself liberated them, without the consent of the plaintiff, that would be an unlawful act and it would be a trespass. So, after all, you are to say whether or not, when the halters were taken from the animals by the defendant, it was by the plaintiff's consent and wish, or was against his consent and against his wish and was done forcibly. That is, was it done because the plaintiff saw fit to liberate them, or was it the defendant's act? If it was the defendant's act, forcibly, against the plaintiff's wish, then it was a trespass. If, on the other hand, the plaintiff consented to do it because he was commanded to do it by the defendant, then, he has no remedy against the defendant because he was not bound to do it.

So, after all, are you satisfied by a preponderance of the evidence that the defendant took from the plaintiff's possession these animals? If he did so take them, then, he is guilty under the plaintiff's writ of forcibly and unlawfully taking these two animals from the plaintiff's possession."

II. "But the defendant says that those animals were wild animals ; that they were captured by the plaintiff, or that the moose was captured by the plaintiff at a time of the year when it was unlawful to hunt and take moose. He says, 'The deer being in possession in close time is proof of its having been unlawfully taken, and consequently I have a right in the state's behalf to take those animals and turn them loose myself.' He says in his plea that if he did do it, he did it by virtue of his authority as game warden. There is no property in wild animals until they have been reduced to possession. If they are unlawfully reduced to possession in violation of the statute, the man who does it is liable for the penalty. He may be fined or imprisoned, as the case may be ; but, as long as he has those animals in his possession, he is entitled to retain them in his custody against every man except such as are clothed with lawful authority to take them from him. Now the defendant does not pretend that he had any precept from any court to seize, to attach, or to take the animals from the plaintiff's possession, and I instruct you, as matter of law, that he had no authority, under the evidence in this case, to go and forcibly take those animals from the plaintiff's possession. If the plaintiff be guilty of violating the game law, the courts will punish him for it. If these animals were unlawfully in his possession and subject to seizure, defendant might by process from a proper court take them, but he had no more authority to go there and take the animals from the plaintiff's possession and turn them loose than he would have, Mr. Foreman, in taking your horses and cows or sheep and doing the same thing."

The verdict was for the plaintiff for $125.00 ; one hundred dollars being for the moose, and twenty-five dollars being for the deer. The defendant excepted to the instructions of the court.

It seems that the bond which the plaintiff claimed to have given, noticed in the opinion, to obtain possession of the moose under the statute, was not signed by the plaintiff, and was in the form of a bond for goods released from attachment.

*P. A. Sawyer*, for defendant.

*P. H. Stubbs, W. Fred P. Fogg, J. J. Parlin,* with them for plaintiff.

The plaintiff had lawful possession of the moose and deer, not having killed or destroyed them in violation of law.   R. S., c. 30, § 12.

About April 30, 1888, the moose and deer were seized by one Charles M. Hackett, a game warden, and immediately restored to plaintiff's possession upon his giving bond satisfactory to Hackett.

Whether plaintiff's possession was lawful or not, it was sufficient to enable him to maintain an action of trespass against a mere wrong-doer.   *Craig* v. *Gilbreth,* 47 Maine, 416 ; *Brown* v. *Ware,* 25 Id. 411.

The last of May or first of June, 1888, defendant seized and liberated the moose and deer under pretense of authority as a. game warden,—caused them to be led out and himself removed the halters which confined them, and turned them loose.

The defendant did not have any precept, and did not claim to have any.

It is only a precept that appears, upon its face, to have been issued by competent authority, that affords justification to the officer who executes it.   *Guptill* v. *Richardson,* 62 Maine, 257.

HASKELL, J.   Trespass *q. c.* and *d. b.* for entering upon the plaintiff's land and liberating a moose and deer there confined. The plaintiff had captured the moose and purchased the deer during close time.   The defendant justifies as game warden.

I.   The defendant cannot be considered as having seized the game under any provision of statute, inasmuch as he held no precept, either to arrest the defendant, or to seize the game ; nor does he pretend that he ever had any intention of procuring one. His testimony, that he acted by the consent of the plaintiff was not believed by the jury; and as the evidence is conflicting upon that point, the court cannot say that the finding of the jury was wrong.

II.   No property exists in wild animals so long as they remain in a state of nature ; but, when killed or reclaimed, they become property ; absolutely, when killed, and qualifiedly, when reclaimed ; for, when restored to their natural, wild and ferocious

state, the dominion of man over them is at an end, and all property in them is extinguished. 7 Co. 16 Finch. 176; Kent. Com. part V, c. 35, § 2; *Blades* v. *Higgs*, 11, H. L. 621.

Since they are the subjects of property, their possession must be *prima facie* title, as with all other chattels, and sufficient to support an action concerning them against any wrong-doer. *Union Slate Co.* v. *Tilton*, 69 Maine, 244; *Adams* v. *McGlinchy*, 66 Maine, 474; *Craig* v. *Gilbreth*, 47 Maine, 416; *Brown* v. *Ware*, 25 Maine, 411; *Burke* v. *Savage*, 13 Allen, 408; *Magee* v. *Scott*, 9 Cush. 148; *Armory* v. *Delamirie*, 1 Stra. 504.

The burden is, therefore, upon the defendant to justify his act if he would defeat the action. *Hodsdon* v. *Kilgore*, 77 Maine, 155. He has not justified the taking of the deer; for the plaintiff's possession of it is sufficient evidence of title until impeached. Moreover, the evidence shows that the plaintiff purchased the deer, and fails to show that it had been captured in violation of law. He, therefore, is entitled to recover the value of the deer. The instructions of the presiding justice relating to the deer were correct; and the evidence sustains the verdict for its value.

III. One cannot justify the taking of a chattel to which he has no title by showing that the person, from whom he took it, is not the owner. *Fiske* v. *Small*, 25 Maine, 453. But, if the subject of the asportation had not become property at all, then the loss of it occasioned no damage. A poacher, who has killed game and thereby made it absolutely property, takes no title to it as against the owner of the soil whose property it would have been, had he killed it. *Blades* v. *Higgs*, *supra*.

This court has said in substance, that the law protects the title or claim of no one that arises from a violation of law. It has held that no action can be maintained upon a contract executed on Sunday; that the price of chattels sold in violation of law can not be recovered, and that no action can be maintained on a note given for goods bought to be peddled contrary to law; that no action for a tort arising from transactions done by the plaintiff in violation of the Sunday laws can be maintained. The court says: "The law distinguishes between rights acquired in conformity with and arising under its provisions, and claims originating in

their clear and palpable violation; that it will not enforce claims made in contravention of its mandates, nor protect property held against and being used for the deliberate purpose of disobeying its enactments.   A different course would be suicidal.   The law cannot lend its aid to the destruction of its own authority and to the disobedience of its own commands." *Lord* v. *Chadbourne*, 42 Maine, 429, 439.

Damages were claimed for preventing the plaintiffs from doing an illegal act, which, if done, would have been criminally punishable, and the court say :   "It is difficult to perceive how the prevention of an offense constitutes a valid cause of action on the part of the would be-offender, who is interfered with in the commission of his intended offense.   It is still more difficult to understand how any damages can have been sustained by reason of such interference." *Railroad Co.* v. *Smith*, 49 Maine, 9.

Suppose a hunter has his rifle levelled at game in close time, and some one shoves it aside so that the game is missed, shall the hunter have damages?   He has only been prevented from continuing a criminal act.

Suppose lobsters illegally taken are thrown overboard alive, is he who does it a trespasser?   Shall the taker of them have damages for his illegal catch?   Or suppose one lands a salmon in violation of law, and a by-stander, while it is yet alive, throws it back into the water, shall the fisherman have the value of the salmon that the law forbids his having at all?

When game is killed, it absolutely becomes property, but when taken alive, only conditionally so; for, when released, property in it is gone.   So long, then, as the possession of live game is illegal, qualified property in it, is illegal also.; and the releasing of such game interferes with no legal right or title of the person illegally holding it captive.

The plaintiff's possession of the moose was *prima facie* title; but, when it appears that his possession was gained in violation of law, it cannot be that the same law will say that his illegal act gave him a legal title.   And if he had no legal title to the moose, he has suffered no damages from its being set loose.

The plaintiff's illegal act prevented the moose from becoming

property at all. Not so with the illegal act of a thief, who may have stolen a coat, for the coat was already property, and had an owner, who alone could lawfully take it from the thief. The public, whose servant the defendant was, stands in the place of the owner of the coat; care should be taken, therefore, not to confound the doctrine of this case with the well settled rule of law, that possession of property is a good title against everybody but the true owner.

IV. R. S., c. 30, § 9, provides: "No person shall (during close time) in any manner hunt, kill or destroy any moose under * * penalty" of $100. The plaintiff followed the moose in the forest until it became snow-bound, and then, by the use of a rope, tied it to a tree, and finally bound it upon a sled, and hauled it some fifteen miles to his home, where he confined it until it was released by defendant. Without doubt this conduct resulting in capture was in violation of the statute. The plaintiff did not destroy or kill the animal, but he did hunt and thereby capture it.

The purpose and scope of the statute is to give moose absolute immunity from the vexations of men during a portion of each year, deemed, by the legislature, necessary for their preservation and protection, and to prevent their decimation and extinction. The defendant's act, therefore, was meritorious and in aid of the purpose of the statute; and while his authority gave him no especial protection, still, duty as an officer called him to interfere and prevent a continued violation of the statute.

The contention that the game had been bonded by the plaintiff is not sustained. No bond, signed and conditioned as provided by statute, was ever given. It was so irregular that it is absolutely void.

*Motion and exceptions sustained, unless*
*plaintiff remits* $100.

PETERS, C. J., WALTON, VIRGIN, EMERY and FOSTER, JJ., concurred.