ABRAMO BONDI *v.* JAMES MacKAY.

October Term, 1913.

Present: POWERS, C. J., MUNSON, WATSON, HASELTON, and TAYLOR, JJ.

Opinion filed December 10, 1913.

*Game—Hunting License—Persons Entitled—Resident Alien— "Resident"—"Non-resident"—Police Power—Game Regulations—Constitutional Law—Equal Protection of Law— Treaties—Nature—Construction—Italian Subjects.*

Under No. 201, Acts 1912, providing that, if the applicant for a hunter's license is a *bona fide* resident of this State or owns improved real estate therein and pays taxes thereon on a valuation of not less than $1,000 he shall pay 75 cents, and if he is a non-resident and does not own improved realty on which he pays taxes on that valuation, he shall pay $10, and defining "resident" as intended to designate "all citizens of the United States who have lived in this State for not less than six months" before applying, and "non-resident" as including all persons not coming within the definition of "resident," one born in Italy and never naturalized, but who is, and for 14 years has been, a *bona fide* resident of this State and a taxpayer therein, though not on improved realty of the required valuation, is not a citizen of the United States, and so not entitled to a license as a "resident" of this State.

Under ch. 1, art. 5, of the State Constitution, providing that "the people of this State by their legal representatives have the sole, inherent, and exclusive power of governing and regulating the internal police of the same," the Legislature was authorized to enact No.

201, Acts 1912, prohibiting hunting game without a license, and providing for the granting of hunting licenses to designated residents and non-residents upon the payment of specified fees.

The wild game in this State belongs to the people thereof in their sovereign capacity, and not in their individual and private capacity, except so far as private ownership may be acquired therein under the Constitution.

The Legislature may regulate the right to take game, in order to accomplish its decrease as well as its preservation and increase.

The distinction made by No. 201, Acts 1912, between residents who are citizens of the United States and those who are not, with reference to the fees exacted for licenses to hunt game, affords a just basis for the classification, and so does not contravene the clause of the Fourteenth Amendment of the Federal Constitution relating to the equal protection of the law.

The fee of $10.50 exacted of non-residents by §48, No. 201, Acts 1912, for a hunting license is not unreasonable.

§1, No. 201, Acts 1912, providing that the word "resident" as used in the act, which relates to the granting of hunters' licenses, was intended to include only citizens of the United States, and so excluding from obtaining a license an Italian subject who was both a resident and taxpayer of this State, is not in conflict with the treaty of February 26, 1871, between the United States and Italy, providing that citizens of each country shall enjoy the same rights and privileges that are granted to natives.

The treaties of the United States are the law of the land, superior to the Constitution and statutes of any state, and binding on all courts.

Treaties conferring rights on the subjects of a foreign nation residing in this country partake of the nature of municipal law, and when the conferred right is one that a court can enforce, and the treaty prescribes a rule by which the right can be determined, the court resorts to the treaty for the rule of its decision.

A treaty provision is to receive a reasonable construction with reference to the purpose of the contract and the intention of the parties.

PETITION for writ of mandamus, brought to the Supreme Court for Washington County at its October Term, 1913, and then heard on an agreed statement. The opinion states the case.

*Richard A. Hoar* for the petitioner.

*Rufus E. Brown,* Attorney General, *John G. Sargent* and *Henry B. Shaw* for the State.

MUNSON, J.   Our fish and game statute provides, with certain exceptions not material here, that "no person shall at any time hunt, trap, shoot, pursue, take or kill wild animals, wild fowl or birds in this State, nor use a gun for hunting the same, * * without having first procured a license therefor. * *" The license is to be issued by town clerks under such rules and regulations and in such form as may be prescribed by the fish and game commissioner.   The statute requires the payment of a license fee, the amount of which depends upon the classification of the applicant.   "If the applicant is a *bona fide* resident of this State or owns improved real estate therein and pays taxes thereon, on the listers' appraised valuation of not less than one thousand dollars," he is to pay seventy-five cents.   "If the applicant is a non-resident and does not own improved real estate upon which he pays taxes on the appraised valuation by the listers of not less than one thousand dollars," he is to pay ten dollars and a clerk's fee of fifty cents.   Acts 1912, No. 201, §§47, 48.   Section one of the same act provides as follows: "The word resident as used in this act is intended to cover all citizens of the United States who have lived in this State for not less than six months prior to date of making application for a license."— "The term non-resident as used in this act, shall include all persons not coming within the definition of resident as set forth in this act."

It appears from an agreed statement of facts that the petitioner is now, and for the past fourteen years has been, a *bona fide* resident and taxpayer of the city of Barre; but that he does not now own, and has not owned, improved real estate within this State upon which he now pays, or has paid, taxes on the listers' appraisal of one thousand dollars.   The petitioner was born in Italy, and has never been naturalized.   The petitionee is the clerk of the city of Barre.   The petitioner applied to the petitionee for a resident hunter's license, and offered to comply with all the prescribed regulations, including the payment of the seventy-five cents fee.   The petitionee refused to issue to the petitioner a resident hunter's license, solely on the ground that he was not a citizen of the United States or of this State,

18

and did not own improved real estate upon which he paid taxes on an appraised valuation by the listers of one thousand dollars.

The first question is whether the petitioner is a *bona fide* resident of this State within the meaning of the statute. It is not necessary to inquire regarding the meaning of the word "resident" as used in statutes relating to the qualification of voters or the support of the poor. The meaning of the word as used in this statute is determined by the statute itself. The word resident "is intended to cover all citizens of the United States who have lived in this State" the required period, and is intended to exclude all persons who are not within this definition, as is manifest from the accompanying definition of non-resident. This plainly confines the class who are entitled to the cheaper license to citizens of the United States. It is agreed that the petitioner has been a *bona fide* resident of this State the prescribed period, but this is immaterial in his case because of his want of United States citizenship. It is not necessary, in this branch of the inquiry, to consider the word "resident" as synonymous with or distinguished from the word "inhabitant" on the one hand, or the word "citizen" on the other hand. It will not avail the petitioner to treat the word "resident" as used in §48 as synonymous with "inhabitant," unless the word "citizen" as used in the definition contained in §1 is given the force of "inhabitant." If this were done, the provision would be that all inhabitants of the United States who had been *bona fide* inhabitants of this State for six months were entitled to a license on payment of the smaller fee. But it is not to be supposed that the Legislature, in referring to citizens of the sovereignty which has the exclusive power of converting aliens into citizens, used the word "citizens" in the sense of "inhabitants."

Subdivision C of §4 of the statute provides that "wild game or fish protected by law if taken by a non-resident may be transported by him from a point within the State to a point out of the State," under certain regulations; and the petitioner argues that this is virtually a definition of the term "non-resident." It might easily be so treated in the absence of a more specific provision; for the association of the right of removal from the State with persons designated as non-residents, taken by itself, points to the use of the term in its ordinary sense. But this provision is to be construed in connection with a special statutory definition, the controlling effect of which has already been in-

dicated.   The petitioner's want of the citizenship which is acquired by naturalization will be fatal to his claim, unless the statute is in conflict with some constitutional or treaty provision.

The petitioner contends that if the word resident as used in §48 is restricted to citizens by force of the definition in §1, the statute is in conflict with the constitution of this State, and also with the Federal constitution.   In considering this objection as applied to our State constitution, the nature of the property had in wild game and the status of the petitioner with reference to it must first be determined.   In citing Chapter II of our constitution the references are to the sections as recently renumbered, unless otherwise indicated.

It will be well to refer at the outset to Chap. II, §39 of the early constitutions,—a section adopted and readopted while Vermont was exercising the powers of an independent State.   That section, now embodied in part in Chap. II, §62, was as follows: "Every person of good character, who comes to settle in this State, having first taken an oath or affirmation of allegiance to the same, may purchase, or by other just means acquire, hold and transfer land, or other real estate; and after one year's residence shall be deemed a free denizen thereof, and entitled to all rights of a natural born subject of this State, except that he shall not be capable of being elected Governor, Lieutenant Governor, Treasurer, Councillor, or Representative in Assembly, until after two years' residence."   The first clause of this provision was needed to secure to an alien some of the rights enumerated, but was not well adapted to the status of one who had taken an oath of allegiance to the State in which he had become a resident.   The use of the word "denizen" to designate one entitled to all the rights of a natural born subject shows a lack of technical exactness which might justify, if occasion required, some latitude in the construction of other words pertaining to the same subject. But no question arises directly upon this section, for there has been no taking of the prescribed oath.

Chap. II, §63 of the constitution reads as follows: "The inhabitants of this State shall have liberty in seasonable times, to hunt and fowl on the lands they hold, and on other lands not enclosed, and in like manner to fish in all boatable and other waters (not private property) under proper regulations, to be made and provided by the General Assembly."   Another source of legislative power over this subject is found in Chap. I, Art. 5;

which provides, "That the people of this State by their legal representatives, have the sole, inherent, and exclusive right of governing and regulating the internal police of the same." The petitioner claims that the power to adopt proper regulations, given to the Legislature in the last clause of §63, applies only to fishing, and that the Legislature can regulate hunting only in respect to the seasons. A different view was taken in *Zanetta v. Bolles,* 80 Vt. 345, 67 Atl. 818, where the restrictive provision of the second clause was applied directly to the liberty to hunt and fowl. But if this were held otherwise, the regulation would be a valid exercise of the police power of the State under Chap. I, Art. 5, above quoted. *State v. Theriault,* 70 Vt. 617, 41 Atl. 1030, 43 L. R. A. 290, 67 Am. St. Rep. 695.

The nature of all property interests in wild game is fully set forth in our decisions. "The wild game in the State belongs to the people of the State in their collective and sovereign capacity, and not in their individual and private capacity, except so far as private ownership may be acquired therein under the constitution. * *" *Zanetta v. Bolles,* 80 Vt. 345, 67 Atl. 818. See also *State v. Niles,* 78 Vt. 266, 62 Atl. 795, 112 Am. Rep. 917; *Payne v. Sheets,* 75 Vt. 335, 55 Atl. 656; *State v. Haskell,* 84 Vt. 429, 79 Atl. 852, 34 L. R. A. (N. S.) 286. The right of the Legislature, in the exercise of the police power, to take measures for the preservation and increase of this common property is fully recognized. *State v. Theriault,* 70 Vt. 617, 41 Atl. 1030, 43 L. R. A. 290, 67 Am. St. Rep. 695. It is equally within the power of the Legislature to provide for and regulate its decrease, if its development becomes injurious to other property rights.

So the relation of an inhabitant of the State, in his individual capacity, to the State in its sovereign capacity, as regards this common property, is determined by Chap. II, §63, in connection with Chap. I, Art. 5. If we treat the word "resident" as used in §48 of the act in question as synonymous with "inhabitant," no difficulty is created; for the inhabitants of the State, in the broader sense, are the people of the State, and the meaning of the latter term in the constitutional provisions affecting this subject is derivable from the constitution itself. "The inhabitants of this State" who are secured rights in game by Chap. II, §63, are the same as "the people of this State" who are given the power to regulate those rights by Chap. I, Art. 5; and these last are the people who act "by their legal representa-

tives;'' a designation which plainly points to the native-born and naturalized inhabitants of the State—the citizen body from which the electorate is taken.

But the petitioner claims that the act conflicts with the Fourteenth Amendment to the Federal Constitution, which secures to all persons the equal protection of the laws. Here the petitioner's claim is to be considered with reference to what he really is, and not with reference to what the statute arbitrarily calls him. He is clearly an actual resident of this State, and the act distinguishes him from others who are residents in a different sense. The petitioner claims that the distinction made between citizens and resident aliens is an unjust and arbitrary discrimination, which renders void the provision regarding licenses. We think the distinction between residents who are citizens and those who are not, made with reference to the acquirement of individual interests in property which belongs to the State, affords a just basis for classification, and that a reasonable discrimination may properly be made against an alien who becomes a permanent resident without taking upon himself the full obligations of citizenship. But the petitioner says that the license fee of ten and one-half dollars is unreasonable and excessive. We think it is not so disproportioned to the privilege as to be in any sense prohibitory. See *State* v. *Norton,* 45 Vt. 258.

The petitioner urges further that the provision as we construe it is in conflict with the treaty between the United States and Italy, in that it denies him rights and privileges to which the treaty entitles him. The provision in question is, in substance, that the citizens of each country shall receive in the states and territories of the other the most constant security and protection for their persons and property, and shall enjoy in this respect the same rights and privileges which are granted to natives, provided that they submit themselves to the conditions imposed on natives. The treaties of the United States are the law of the land, superior to the constitution and statutes of any State, and binding upon all courts. U. S. Con., Art. VI. Treaty provisions which confer rights upon the subjects of another nation residing in this country partake of the nature of municipal law; and when the right conferred is one that can be enforced in a court of justice, and the treaty prescribes a rule by which the right is to be determined, the court resorts to the treaty for the rule of decision as it would to a statute. *Edye* v. *Robertson,*

112 U. S. 580, 28 L. ed. 798, 5 Sup. Ct. 247.   The provision under consideration is to receive a reasonable construction, having reference to the purpose of the treaty and the intention of the contracting parties.   Under this provision the Italians residing here are to receive complete protection for the property they have or may acquire, and are to have in respect to such property the rights and privileges granted to natives.   But there is nothing in this which entitles them to share equally with the natives in such privileges as the Legislature may grant in the wild game of the State, and nothing which seems intended to protect them from the minor discriminations incident to the ordinary exercise of the police power.

Our conclusion is that the petitioner, although by the agreed statement a resident of Barre, is not entitled to a resident hunter's license, because not a citizen of the United States and of this State.

*Petition dismissed with costs.*