MASON JONES *v.* E. H. METCALF.

May Term, 1921.

Present:  WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed January 4, 1923.

*Animals—Property in Animals Ferae Naturae—Status of Property Held for Unlawful Purpose—Game Acquired in Violation of Law—Right of Game Warden to Seize and Detain Traps Illegally Maintained.*

1. Animals *ferae naturae* at large in the State belong to the people of the State in their collective and sovereign capacity, and not in their individual and private capacity, except so far as private ownership may be acquired therein under the Constitution, subject always to such proper regulations as the Legislature may make, in conformity with which, but not otherwise, an inhabitant of the State has the right to appropriate to his own use such of these animals as he may capture and retain, which qualified ownership the law recognizes as private property.

2. The law distinguishes between rights acquired in conformity with and arising under its provisions, and claims originating in their clear and palpable violation, and it will not enforce claims made in contravention of its mandates, nor protect property held against, and being used for, the deliberate purpose of disobeying its enactments.

3. Where a person set a bear trap contrary to the provisions of G. L. 6431, and therein captured a bear, the means taken to reduce the animal to possession having been unlawful, such unlawful capture would not give such a title as would enable such person to maintain an action of tort against a game warden who, in the performance of his statutory duties, took possession of the animal for evidentiary purposes; and the fact that the bear was a noxious animal for the destruction of which the State offered a bounty does not affect the question.

4. A game warden, charged with the duty of enforcing the game laws of the State, has authority to seize without a warrant, and

detain for evidentiary purposes, a bear trap, found in use in violation of G. L. 6431.

ACTION OF TORT against a game warden, for seizing and detaining a trap, belonging to plaintiff, and a bear caught therein. Pleas, the general issue and special matter in justification. Trial by jury in the Brattleboro Municipal Court, *Addison E. Cudworth,* J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion states the case. *Reversed and remanded.*

*Herbert G. Barber* and *C. Menzies Miller* for the defendant.

*Neil D. Clawson* for the plaintiff.

TAYLOR, J. The plaintiff had judgment in the court below on the verdict of a jury. The defendant brings the case here on exceptions saved to the exclusion of certain evidence and to certain portions of the court's charge. The exceptions all grow out of a single question relating to the right of a county fish and game warden to seize and detain for evidentiary purposes a trap illegally set and a wild animal caught therein. In the circumstances the exceptions do not require separate treatment.

In October, 1919, the plaintiff set a bear trap in the "Sherwin pasture" in the town of Stratton, to which a chain and clog were attached. At some time before the 14th of October, the bear in question got into this trap but had succeeded in getting away from the place where it was set, taking the trap, chain and clog along with it. At some distance from the place where the trap was set the chain became entangled so that the bear had been unable to make any further escape when discovered by members of the defendant's party. The defendant was then the fish and game warden for Windham County. Having information that there were bear traps set in the vicinity of Stratton in violation of law, he set out in company with two deputy wardens and a guide to make an investigation. Their search brought them to the Sherwin pasture in the afternoon of October 14.

They discovered the place where the trap had been set and indication on the ground that some animal had gotten into it and dragged it away. Continuing the search, one of the party,

not the defendant, discovered the bear in the trap and had shot it before the defendant arrived on the scene. The latter directed his assistants to carry the bear to their automobile, some two or three miles away, he carrying the trap and chain. The bear and trap were taken to Brattleboro, where the defendant resides. He retained possession of the trap and left the bear at a slaughter house to be properly dressed and await the appearance of a claimant. He caused a notice of the seizure to be published in the next issue of the *Brattleboro Reformer*, with a view, as he testified, of discovering the owner. The notice reached the plaintiff and on October 18 he went to Brattleboro where he met the defendant and Mr. Gibson, the State's attorney of Windham County, at the office of the latter. He identified the trap as his and the one he had set in the Sherwin pasture. On his demand the trap was delivered to him and the defendant went with him to the slaughter house where he received the hide of the bear. The carcass was not taken, as the meat was found to have spoiled so that it was unfit for food. The defendant made no claim of ownership of the trap or bear, and after the interview at the office of the State's attorney did nothing to keep the trap or any part of the bear from the plaintiff. The latter claimed that the hide and meat of the bear were spoiled through the fault of the defendant and he was permitted to recover damages for the loss of the animal and compensation for time and expenses in securing his property after it was taken by the defendant.

The court practically directed the jury to find for the plaintiff so far as taking of the trap was concerned, the only disputed question left to the jury being whether the return of the trap was accepted in full satisfaction of damages. Respecting the taking of the bear, the case was submitted on the theory that the plaintiff could recover damages therefor if the jury found that the bear was entrapped in such a manner as to deprive it of the power to escape and go at large, and also found that the plaintiff had not abandoned the pursuit before the taking—questions concerning which the evidence was conflicting. The defendant offered to show what was discovered at the place where the trap was set indicating that it was not set in the manner required by law—that it was not guarded as required by the statute—which was excluded as being immaterial. The court instructed the jury that if they found from the evidence that the plaintiff was

the owner of the trap and that it was taken away by the defendant (facts not in dispute) and was treated as the undisputed evidence shows it was treated, it was an invasion of the plaintiff's rights; and further that neither the setting of the trap in an unlawful manner, nor the taking of a wild animal in the trap so set, makes either the game captured or the trap contraband and subject to seizure as a pure matter of right. The defendant was permitted to testify that he took the trap and bear for the purpose of conserving them as evidence to present to the prosecuting officer of the county and that he presented the evidence to the State's attorney. In the same connection he was also permitted to testify that his only motive for taking them, other than to conserve the evidence, was to secure the identity of the person who owned the trap. This line of evidence was received as bearing solely on the question of exemplary damages and the jury was instructed to so regard it. Exceptions were saved to the court's rulings so far as they were adverse.

It will be seen that the case presents two separate though interrelated questions: (1) The right of property in a wild animal captured in a manner forbidden by law as against a fish and game warden who, acting in his official capacity, has taken it into his possession with a view of securing evidence for a prosecution of the offender. (2) The right of such game warden to seize without a warrant property of the offender employed in the unlawful capture and retained for a like purpose. The statute, the violation of which is relied upon as a defense to this action, provides: "A person who sets or causes to be set a bear trap shall build in a substantial manner and maintain three-fourths around the same a railing or guard not less than three feet high, and shall protect the entrance of such enclosure against domestic animals by placing a pole horizontally across such entrance at a distance of three feet from the ground. A person who violates a provision of this section shall be fined twenty dollars." G. L. 6431. In considering the questions presented we are to assume that the plaintiff had not complied with the requirements of this statute. What effect would such failure have upon the respective rights of the parties?

The State fish and game commissioner is authorized to appoint county fish and game wardens (G. L. 6358) who are required to enforce all provisions of Title 38 of the General Laws,

of which the section in question is a part.  G. L. 6359.  It was pursuant to this requirement that the investigation which led to the discovery and seizure of bear and trap was conducted. Among the duties expressly laid upon such wardens is that they "shall seize fish, birds and quadrupeds taken or held in violation of a provision of the title."  Although this provision by itself is broad enough to cover the seizure of the bear, benefit of it is not claimed, probably with reason on account of the definition of quadrupeds found elsewhere in the title.  G. L. 6332.  In any event, the defendant is not entitled to more than was claimed below, as he seeks a reversal, and the inquiry is confined to his general powers referred to above.

The plaintiff's right to maintain an action for damage on account of the bear stands differently than his right of action respecting the trap.  His title to the trap was unquestioned and his rights were those of unqualified ownership; while, if he had any property rights in the bear, they were such as arise from having reduced the animal to possession.

[1, 2]    The rule is everywhere recognized that animals *ferae naturae* at large in the State belong to the people of the State in their collective and sovereign capacity and not in their individual and private capacity, except so far as private ownership may be acquired therein under the Constitution, subject always to such proper regulations as the Legislature may make. From this common property an inhabitant of the State has the right to appropriate to his own use such as he may capture and retain in conformity with reasonable regulations established by law for the common good.  In such manner, and such only, he can acquire a qualified ownership in the animal which the law recognizes as private property.  Such in brief is the holding of our cases.  *State* v. *Norton,* 45 Vt. 258; *Payne* v. *Sheets,* 75 Vt. 335, 55 Atl. 656; *State* v. *Niles,* 78 Vt. 266, 62 Atl. 795, 112 A. S. R. 917; *Zanetta* v. *Bolles,* 80 Vt. 345, 67 Atl. 818; *Bondi* v. *McKay,* 87 Vt. 271, 89 Atl. 228, Ann. Cas. 1916C, 130; *Villa* v. *Thayer,* 92 Vt. 81, 101 Atl. 1009, L. R. A. 1918A, 837.  The same principles are announced in *New England Trout Club* v. *Mather,* 68 Vt. 338, 35 Atl. 323, 33 L. R. A. 569; *State* v. *Theriault,* 70 Vt. 617, 41 Atl. 1030, 43 L. R. A. 200, 67 A. S. R. 695, and *State* v. *Haskell,* 84 Vt. 429, 79 Atl. 852, 34 L. R. A. (N. S.) 286, cases involving the power of the Legislature to regulate fishing.

The precise question presented here has never before arisen in this Court. It has been held in other jurisdictions, however, that the act of reducing a wild animal to possession, as affecting the question of ownership, must not be wrongful and that such animals captured in violation of law do not become the property of the capturer such as will give him the right to maintain an action against a game warden who seizes or releases the animal. *James* v. *Wood,* 82 Me. 173, 19 Atl. 160, 8 L. R. A. 448; *State* v. *Repp,* 104 Iowa 305, 73 N. W. 829, 40 L. R. A. 687, 65 A. S. R. 463; *Rexroth* v. *Coon,* 15 R. I. 35, 23 Atl. 37, 2 A. S. R. 863; 1 R. C. L. 1069; 3 C. J. 20; note 18 A. D. 553. The question has usually arisen in actions between a trespasser and the owner of the land on which wild animals were taken, or one defending in the right of the latter. *Blades* v. *Higgs,* 11 H. L. Cas. 621, is a leading English case on the subject. The opinion by the Lord Chancellor reviews the earlier English cases and states the rule to be that title to property created merely by the act of reducing a thing into possession necessarily implies a reduction into possession effected by an act which is not in any way of a wrongful nature. The case holds that such an act effected by one who is at the moment a trespasser cannot create a title to property. *James* v. *Wood, supra,* may be regarded as a leading case in this country on the question and is very much in point. The action was trespass for entering upon the plaintiff's land and liberating a moose and a deer confined there. The plaintiff had captured the moose and purchased the deer during the close season. The defendant justified as a game warden. His act was not authorized by any provision of statute. It was held that the defendant had not justified the taking of the deer, as he failed to show that it had been captured in violation of law. But as to the moose, it was held that the plaintiff's illegal act of capture out of season gave him no title to support the action—that the law protects the title or claim of no one that arises from a violation of law. The argument in support of the holding is convincing. The law distinguishes between rights acquired in conformity with and arising under its provisions, and claims originating in their clear and palpable violation. It will not enforce claims made in contravention of its mandates, nor protect property held against, and being used for, the deliberate purpose of disobeying its enactments. A different course would be suicidal.

The law cannot lend its aid to the disobedience of its own commands and to the destruction of its own authority.

It is on the same principle that actions cannot be maintained upon contracts executed in violation of law, as for example on Sunday, or for an illegal consideration, such as notes given for articles sold in violation of law or for money lost in gambling. On the same principle it was said by this Court in *Spaulding* v. *Preston,* 21 Vt. 9, 15, 50 A. D. 68, that courts of justice will not sustain actions in regard to contracts, or property, which have for their object the violation of law. That was an action of trover against the sheriff of Caledonia County for the detention of pieces of German silver of the size and thickness of Mexican dollars, made in that form for the purpose of being stamped and milled into counterfeit coin, which were seized without statutory authority but were being held for the purpose of evidence. The plaintiff showed title to the property, but was denied a recovery among others on the ground now being considered.

[3] The fact being established that the trap was not properly fenced, and so maintained in violation of law, the means taken to reduce the bear to possession would be wrongful; and, on the authority of the cases cited, the unlawful capture would give the plaintiff no title to the animal that would support this action. The unlawful means of capture would prevent its becoming his property while yet alive. It is immaterial to this case to inquire whose property it became after it was killed. If it then became the absolute property of any one, it was clearly not the plaintiff's.

The question is unaffected by the fact that the bear was a noxious animal for the destruction of which the State offered a bounty. The distinction found in some cases between wild animals of a "base" nature and those of a "generous" nature relates to the question whether the particular animal was the subject of larceny, and was probably made in favor of human life at a time when larceny was a capital offense. While it has been held that wild animals of a base nature in contemplation of law are not a subject of larceny, it seems that the distinction has never been made when the right of the owner to be protected by a civil action is involved. *Warren* v. *State,* 1 Greene (Iowa) 106; *Norton* v. *Ladd,* 5 N. H. 203, 20 A. D. 537; 1 Hawk P. C. 33, §23; 4 Bl. Com. 234, 235. The general property in the bear when at large was in the people of the State in their sovereign

capacity.  They could protect it or invite its destruction as deemed for the common good.  They could regulate the means of capture, likewise for the common good, though not for the protection of the animal.  Such is the purpose and effect of the statute which it is claimed the plaintiff violated.

[4]   The remaining question involves the right of a public officer charged with the duty of enforcing some provision of law to seize property being used or intended for use in violation thereof and detain the same merely for evidentiary purposes. The right of the defendant to take the trap in the circumstances shown and offered to be shown is unmistakable.  It rests upon principles indispensable to the proper administration of criminal law, as is pointed out in *Spaulding* v. *Preston, supra*—principles so well recognized and of such general application that the Court was then unable to find any precedent for such an action.  We need say no more than that this phase of the case is controlled by the decision of this Court in the case cited, where the question is fully discussed.  A valuable note showing possible limitations of the doctrine will be found in 11 A. L. R. 681.

It follows that the defendant's exceptions must be sustained and that he is entitled to a new trial in accordance with the views herein expressed.

*Reversed and remanded.*