**William LANGLE**

v.

**Robert BINGHAM and Edward F. Kehoe.**

**Civ. A. No. 75–261.**

United States District Court, D. Vermont.

March 23, 1978.

David A. Gibson, Webber, Fisher, Perra & Gibson, Brattleboro, Vt., for plaintiff.

John J. Zawistoski, Ryan, Smith & Carbine, Rutland, Vt., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

HOLDEN, Chief Judge.

This action was brought by William Langle of Westminster, Vermont, under the provisions of 42 U.S.C. § 1983, to recover compensatory and punitive damages against Robert Bingham of Newfane, Vermont, a game warden employed by the Vermont Fish and Game Department, and Edward Kehoe of Montpelier, Vermont, the commissioner of that department. The court's jurisdiction is founded on 28 U.S.C. § 1343(3). The plaintiff seeks redress for violation of his civil rights by the defendants, purporting to act under color of the Vermont fish and game laws, in violation of rights protected by the Fourth Amendment to the United States Constitution and Article II of Chapter I of the Constitution of Vermont. Since the jurisdictional base of the action is § 1343(3), the primary concern is the Fourth Amendment claim.

In the autumn of 1972 the plaintiff found a disabled deer, lying adjacent to a public highway in Vermont. Langle took the animal into his possession. He later learned that his taking of the deer was in violation of Vermont game laws. A prosecution followed which resulted in the suspension of his resident hunting license for the period of one year from January 12, 1973. The plaintiff was concerned about this consequence and consulted with the defendant Bingham about the nature and extent of the license suspension. He was informed by the warden that, as a resident landowner, he didn't need a license to hunt on his own property. This advice was in keeping with 10 V.S.A. § 4253, which then provided:

(a) A resident owner of lands, his spouse and their minor children, or a regular employee of a resident owner may, without procuring a license under this chapter, take fish from the water therein, short pickerel, and take wild animals or wild birds therein subject to the provisions of this part, except under Sections 4743 and 4744 of this title.

The exception referred to in § 4744 provides:

For the sixteen consecutive calendar days commencing on the second Saturday in October, a person may take by bow and arrow one wild deer anywhere in the state. 10 V.S.A. § 4744.[1]

The defendant Bingham, in instructing the plaintiff, made no reference to hunting game by bow and arrow. The plaintiff also had access to a pamphlet published by the Vermont Fish and Game Department, under the authority of the commissioner, entitled "General Fish and Game Laws and Regulations, 1973–74." The text of the book states:

*License Information*

*Hunting, Fishing and Trapping*

A person of any age engaged in fishing, hunting, or taking any wild animals must be properly licensed, except as listed below in (a) and (b).

Unless otherwise provided, any game which may be taken by shooting, may be taken by use of bow and arrow.

---

1. Vermont Fish and Game Regulations provide:

§ 4. *Bow and arrow hunting*

(a) A resident owner of lands in Vermont, his spouse, and minor children may hunt on these lands and take fish within said lands without a license . . . .

Being concerned about how a wild deer could be reported without a license tag, the plaintiff telephoned a Mrs. Harlow, the town clerk of Putney, Vermont. She informed him he could report the taking without a tag affixed to the animal. This conversation took place before the opening of the bow season.

On October 18, 1973, the plaintiff went hunting deer with bow and arrow and took a doe on property he owned not far from his home. He returned to his house and made out a paper indicating a description of the animal and the time and place of taking. He took the paper to the town clerk of Westminster to register the taking.

Sometime after the kill was reported, the defendant Bingham received a radio message from the Montpelier office of his department that the fish and game laboratory had received a report of a doe taken by Langle with bow and arrow at Westminster. Warden Bingham proceeded to the town clerk's office at Westminster to verify the information with the town clerk. On October 26, 1973 Bingham went to Langle's home at about 4:00 P.M. He arrived in uniform, with side arms, in an official radio-equipped vehicle of the Fish and Game Department.

A young woman, identified in the evidence as Kathryn Clausen, arrived at the Langle dwelling home. Officer Bingham was sitting in his police vehicle, parked in the driveway alongside the barn. She informed Officer Bingham that the plaintiff was not at home. Bingham waited in the cruiser. Shortly thereafter another game warden, Philip Howland, came on the Langle property in a second police cruiser. He was called by Warden Bingham to assist him in the developing situation at the Langle place. Langle soon arrived and, after a brief confrontation with the officers, entered his home, followed by the wardens Bingham and Howland. Inside the house

the defendant Bingham announced to the plaintiff—"I am sorry, but we have to take your meat. You have an illegal deer." The plaintiff became much upset and protested the taking. He informed the officers that he had called the Putney town clerk before hunting the deer. He tried to verify this by a call to Mrs. Harlow, but to no avail. The plaintiff reminded the defendant Bingham of their prior conversation at the time of his license suspension the year before. The defendant responded that at that time he didn't know Langle hunted with a bow. After extended and agitated argument, Bingham concluded the dispute by inquiring of Langle if his home freezer was in the same location as the year before. Langle countered by inquiring if the officers had a search warrant; their response was that a warrant was not needed.

With this, the officers proceeded to the barn and removed some sixty pounds of venison. The meat was stored in the freezer with a large quantity of frozen chickens and vegetables previously packed by the plaintiff and Ms. Clausen. The plaintiff offered no physical resistance, but his verbal protest was clear and persistent. To avoid disruption of the other food products, the plaintiff pointed out the deer meat. One of the officers removed and placed the venison in a bag provided by the plaintiff at the defendant's request. The defendant Bingham asked the plaintiff where the deer hide was located. Upon receiving the information, the warden removed the skin which had been hung up to dry in another part of the barn.

The packaged meat and the hide were taken over the plaintiff's protest and without his consent. There was ample opportunity for one of the wardens to obtain a warrant while the second maintained a watch to prevent its removal. Nonetheless, the search of the barn and freezer, incident to the taking, was conducted without the plaintiff's permission, but in response to insistent demands asserted by the game wardens. Before leaving the premises, the defendant assured the plaintiff there would be no prosecution nor penalty beyond the

seizure of the meat. Warden Bingham later sold the venison for five dollars and the hide for four dollars. The defendant had intended to use the meat for his own sustenance during the winter.

The plaintiff has been an ardent hunter who has derived great enjoyment from fishing and hunting in Vermont. However, this is not the first occasion that his pursuit of this recreation has been interdicted by action of Vermont game wardens. While a resident of New Jersey, he obtained a non-resident license. He subsequently moved to Vermont and was convicted for making a false statement in obtaining a resident license. Later, as reported earlier in the findings, he was convicted of taking the deer found on the roadside.

The court finds that the acts of the defendant Bingham were not done with a malicious or evil intent. However, the search of the plaintiff's property and the seizure of the venison were undertaken under color of state law in a wilfully reckless manner and with wanton disregard of the plaintiff's rights. The evidence fails to establish that the acts and conduct of Wardens Bingham and Howland were ordered, directed or authorized by the defendant Kehoe, either in his individual capacity or as Commissioner of the Fish and Game Department of the State of Vermont. In his capacity as head of the department, he is responsible for the hiring, training and assignment of game wardens who serve as enforcement officers in the field.

In consequence and as a proximate result of the defendant Bingham's unlawful search of the plaintiff's premises, including the barn appurtenant to the dwelling, the court finds the plaintiff has suffered mental pain and humiliation in the amount of $1,000 actual damage. The injury to his property interest in the food and hide that were seized and confiscated by the game warden is in the amount of $100. The amount in lieu of interest on the compensatory damage sustained by the plaintiff is $466.00.[2]

*Conclusions of Law*

The purpose of the Congress in the enactment of the Civil Rights Statutes was ". . . to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it." *Monroe v. Pape,* 365 U.S. 167, 171–172, 81 S.Ct. 473, 476, 5 L.Ed.2d 492 (1961). The inclusion of the provisions of 42 U.S.C. § 1983 was "to give a remedy to parties deprived of constitutional rights, privileges and immunities by an official's abuse of his position." *Id.* at 172, 81 S.Ct. at 476.

The defendant Bingham undertook the search of the plaintiff's premises in reliance on the power to search contained in 10 V.S.A. § 4194.

> Game wardens shall have the power to search where they have reason to believe that fish or wild animals are possessed in violation of a provision of this Part or regulations or orders authorized under this Part. Without a warrant, they may examine the contents of a vehicle, aircraft, boat, box, car, locker, basket, creel, crate, game box or package and a building other than a dwelling house and its immediate dependencies. With a search warrant, they may examine a dwelling house and its immediate dependencies.

The barn that housed the frozen food refrigeration unit, where the venison was stored, was an immediate dependency of the plaintiff's dwelling place and an adjunct to the household. A dependency is "3. a building (as a stable or kennel) appurtenant to a main dwelling [a double driveway leads to the palace and its *dependencies. Amer. Guide Series:* Va.]." *Webster's Third New International Dictionary.* Although the defendant Bingham relied on § 4194 *supra,* the statute itself requires a search warrant and affords no protection

---

**2.** Vermont legal rate of interest from October 26, 1973 to April 3, 1974 was 7½%. From April 3, 1974 to date the legal rate of interest is fixed by statute at 8½%. 9 V.S.A. § 41(a) as amended 1973. No. 230 (Adj.Sess.).

for searching the premises where the game was seized. Belief, however well-founded, that illegal venison is concealed in a dwelling house furnished no justification for the search of a refrigerator, even though consent to search the premises had been given. *State v. Connolly,* 133 Vt. 565, 570, 350 A.2d 364 (1975). Here no consent was given and the defendant's belief about the presence of the venison in the barn gave him no justification to search the area and its contents without a warrant. *Agnello v. United States,* 269 U.S. 20, 33, 46 S.Ct. 4, 70 L.Ed. 145 (1925). This basic rule is not open to question. *Vale v. Louisiana,* 399 U.S. 30, 34, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970).

The seizure of the venison from the food supplies kept for the plaintiff's larder was equally offensive to the state and federal constitutional safeguards. *See State v. Aldrich,* 122 Vt. 416, 423, 175 A.2d 803 (1961). A game warden is not a general enforcement officer of the State of Vermont; his authority is wholly derived from the state statutes. *Id.* at 422, 175 A.2d 803; *Villa v. Thayer,* 92 Vt. 81, 82, 101 A. 1009 (1917).

The Vermont fish and game laws authorize state game wardens to seize fish or wild animals taken and held in violation of the statute. 10 V.S.A. § 4193(a).[3] The power to seize wild game, if illegally possessed, is for evidentiary purposes only. *See Jones v. Metcalf,* 96 Vt. 327, 334, 119 A. 430 (1923). The statutory authority is not a roving commission for game wardens to unlawfully enter premises, seize game they believe to have been taken in violation of the fish and game laws and then dispose of

the property according to their own dictates.[4] Here the defendant Bingham entertained no purpose of detaining the property as evidence for he openly announced to the plaintiff that he would not be prosecuted. And, of course, the search and seizure cannot be justified as the incident of lawful arrest, since no arrest was made nor contemplated.

That takes us to the ultimate question of the liability of the defendants under 42 U.S.C. § 1983.

The evidence which composes the proof in this case fails to establish liability on the part of the defendant Kehoe, either in his official or individual capacity. The conspectus of the plaintiff's evidence in its most favorable aspect to his case shows that the defendant Kehoe cannot be held liable for the acts of his junior warden merely by virtue of his office as commissioner of the Department of Fish and Game. There has been no showing that the defendant Kehoe authorized or participated in the events which occurred at the Langle premises on October 26, 1973. The evidence is beyond dispute that Warden Bingham acted under authority conferred by way of 10 V.S.A. § 4194 without specific direction by the commissioner. While Bingham responded to a radio bulletin from Montpelier to investigate the Langle report, the source of this request is not assigned in the proof to the defendant commissioner. Without such a showing, the evidence is insufficient to impose liability under 42 U.S.C. § 1983. *E. g. Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir., 1973) (Friendly, J.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973).

3. § 4193. *Seizure; power to arrest*

   (a) The chief game warden and state and deputy game wardens shall seize fish, or wild animals taken or held in violation of a provision of this Part or regulations or orders authorized under this Part. They may arrest, without warrant and on view, in any part of the state, a person violating a provision of this Part or regulations or orders authorized under this Part and take such person before a magistrate having jurisdiction of the offense and detain such person in custody at the expense of the state until opportunity is had to notify a prosecuting officer, who shall forthwith prosecute such offender.

4. It is not essential to decide whether the plaintiff was authorized to take wild deer on his own property and without a license under 10 V.S.A. §§ 4253 and 4744, *supra.* Construction of the state game law is better left to the state courts. In any event, searches and seizures proscribed by federal and state constitutions are unlawful from the beginning and cannot be legalized even if contraband is discovered. *See Byars v. United States,* 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 520 (1926); *State v. Pilon,* 105 Vt. 55, 163 A. 571 (1933).

The plaintiff's claim against Warden Bingham has firmer footing. This is so despite the qualified immunity enjoyed by enforcement officers for acts performed in line of duty. The privilege is not absolute; it is conditional. The shield is lost upon proof of actual malice or reckless indifference to the rights of the individual citizen. *See Bivens v. Six Unknown Agents of Federal Bureau of Narcotics,* 456 F.2d 1339, 1347 (2d Cir. 1972), *Kelley v. Dunne,* 344 F.2d 129, 133 (1st Cir. 1965). Judge, now Justice, Stewart referred to this concept in *A.B.C. Needlecraft v. Dun & Bradstreet, Inc.,* 245 F.2d 775 (2d Cir. 1957): "the malice necessary to destroy a qualified privilege can also consist of 'such a wanton and reckless disregard of the rights of another as is ill will's equivalent.'" *Id.* at 777, *quoting Pecue v. West,* 233 N.Y. 316, 322, 135 N.E. 515, 517 (1922).

While the Civil Rights Act does not apply to federal officers, the parallel in the application of the principles of qualified immunity are appropriate and enlightening. *See Bivens, supra,* 456 F.2d at 1346–1347. The statutory power granted to fish and game officials under 10 V.S.A. § 4194 to inspect limited areas and containers without a warrant, excludes a home place and its dependencies. The language clearly indicates that to examine these areas, prior judicial action, by way of a warrant, is required. More particularly in the context of the evidence presented here, where there was neither a warrant to search nor an arrest, there was no justification to resort to self-help in the face of the owner's continuing protest. *See Hughes v. Johnson,* 305 F.2d 67, 69–70 (9th Cir. 1962).

The facts established in the evidence constitute an unlawful intrusion by the defendant Bingham into the plaintiff's protected right to privacy in his home and its appurtenances. Since there was no judicial determination that the game found in the plaintiff's possession was unlawfully taken, the seizure and confiscation of the deer hide

and venison established a deprivation of property under color of state law contrary to the safeguards provided in the Fourteenth Amendment.

Since the acts complained of by the plaintiff against the defendant Bingham were done in reckless and wanton disregard of rights protected by federal and state constitutions, the court deems it appropriate to award punitive damages in an equivalent amount of $1,100 to serve in vindication of the policy of the Civil Rights Act. *See Zarcone v. Perry,* 572 F.2d 52, No. 77–7469 (2d Cir., March 3, 1978); *McDaniel v. Carroll,* 457 F.2d 968 (6th Cir. 1972), *cert. denied sub nom. Carroll v. McDaniel,* 409 U.S. 1106, 93 S.Ct. 897, 34 L.Ed.2d 687 (1973).

Accordingly, the clerk will enter judgment for the plaintiff to recover of the defendant Bingham, as the plaintiff has alleged, the sum of $1,100 compensatory damages, with a sum in lieu of interest from October 26, 1973 of $466.50 and $1,100 punitive damages for a total award of $2,666.50, together with taxable costs.[5] The clerk is further directed to enter judgment for the defendant Edward Kehoe, since he is found to be not liable to the plaintiff Langle as charged in the complaint.

It is so ORDERED.

---

5. The complaint asks for counsel fees. However, as no evidence was presented to sustain the claim, the award of attorney's fees is denied. *See Stolberg v. Members of the Board of Trustees for the State College of Connecticut,* 474 F.2d 485 (2d Cir. 1973).